IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PETERSON ENTERPRISES, INC., RONALD A. PETERSON, ERIC PETERSON, KIRK PETERSON, RONALD A. PETERSON REVOCABLE TRUST, RONALD A. PETERSON 2010 IRREVOCABLE TRUST and VERNON L. GOEDECKE COMPANY, INC., | § § § § § § § § § | No. 109, 2019<br><br>Court Below: Court of Chancery of the State of Delaware<br><br>C.A. No. 11189-VCG |
| Defendants Below, Appellants, | § § § § | |
| v. | § § | |
| BRACE INDUSTRIAL CONTRACTING, INC., and PETERSON INDUSTRIAL SCAFFOLDING, INC., | § § § § § § | |
| Plaintiffs Below, Appellees and Cross-Appellants. | § § § § | |

Submitted: October 16, 2019
Decided: January 6, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **ORDER**

This 6th of January 2020, after careful consideration of the briefs, oral argument, and the record on appeal, it appears to the Court that:

1. The appeal involves disputes arising from the sale of a scaffold subcontracting company, Peterson Industrial Scaffolding, Inc. (PIS). PIS was formerly a wholly owned subsidiary of Peterson Enterprises, Inc. (PEI). On August

10, 2014, PEI sold all of its stock in PIS to Brace Industrial Contracting, Inc. After settlement, disputes arose, and Brace Industrial Contracting, Inc., and PIS (Brace) filed suit in the Court of Chancery against PEI and the other defendants.

2. Brace's amended complaint set forth three sets of claims, only two of which are raised and will be discussed in this appeal. In the first set, Brace alleged that asset disclosure schedules which were part of the Stock Purchase Agreement (SPA) overstated the amount of industrial and commercial scaffolding equipment owned by PIS at the time of sale (the inventory claims). Because PEI had misrepresented the amount of scaffolding equipment inventory owned by PIS, the amended complaint alleged, Brace had paid for inventory it never received. It sought indemnification under the SPA for the difference between the scaffolding inventory as represented on the asset disclosure schedules and the inventory actually owned by PIS at the time of sale. The amended complaint further alleged that Defendants Ronald Peterson, the Ronald A. Peterson Revocable Trust, and the Ronald A. Peterson 2010 Irrevocable Trust (the Guarantors) had guaranteed PEI's indemnification obligations. In a written opinion dated October 31, 2016, the Court of Chancery ruled in Brace's favor and awarded Brace $703,975 on the inventory claims. In a separate order dated December 12, 2018, the Court of Chancery also awarded Brace $440,149 in costs and $241,686 in attorney's fees under the SPA's indemnification provision.

2

3. In a second set of claims, Brace alleged that PEI had agreed on behalf of itself and all its affiliates to refrain from competing with Brace for five years except as permitted in a "carve-out" provision (the restrictive covenant claims). Brace alleged that PEI had done so through its subsidiary, Vernon I. Goedecke, Inc. (Goedecke). The complaint named Defendants Goedecke, Ronald Peterson, Eric Peterson, and Kirk Peterson as affiliates of PEI who were liable for the restrictive covenant claims. In its October 31, 2016 opinion, the Court of Chancery ruled in favor of PEI and the other defendants on the restrictive covenant claims.

4. The Appellants set forth three claims of error on appeal. They first contend that the Court of Chancery erred with respect to the inventory claims by adopting a methodology for determining the volume of scaffolding at the time of closing which was not the product of an orderly and logical deductive process. In connection with this claim of error, the Appellants also contend that Brace did not follow the proper procedure set forth in the SPA for obtaining indemnification. The second claim is that the Court of Chancery committed error in awarding Brace costs of $440,149. That sum represents the entire amount of costs incurred by Brace in the action. The Appellants argue that under the SPA Brace was entitled to recover costs only for claims upon which it prevailed, such as the inventory claims, not for claims upon which it did not prevail, such as the restrictive covenant claims. Awarding the entire $440,149, the Appellants argue, improperly awards costs for

unsuccessful claims. The third claim of error is that the Court of Chancery erred in entering judgment against Eric and Kirk Peterson in any amount and against the Guarantors for judgment amounts which exceed their liability for SPA indemnification. As part of this claim, the Appellants also contend that the Court of Chancery erred by ordering that the entire amount of the judgment be paid out of an escrow fund which was established by an Escrow Agreement as part of the transaction.

5. Brace has cross-appealed, claiming that the Court of Chancery erred by awarding it only $241,686 in attorneys' fees.

6. We have carefully considered the arguments on appeal, and affirm the Court of Chancery's disposition of the inventory claims as legally correct and the product of an orderly and logical deductive process for the reasons stated in its October 31, 2016 opinion. We also affirm the Court of Chancery's award to Brace of $241,686 for the reasons assigned by the Court of Chancery in its order dated January 11, 2019. We do, however, find merit in Appellant's claims of error related to the award to Brace of $440,149 in costs, and the form of the judgment.

7. The Appellants concede that Brace is entitled to $18,663.88 of costs under Court of Chancery Rule 54(d) for its success on the inventory claims. Brace argues that it is entitled to all of the $440,149, which, as mentioned, is its entire costs on all claims. Brace contends that Section 6.2 of the SPA entitles it to all costs not

4

covered by Rule 54(d).  Section 6.2 gave Brace a right of indemnification for any "[l]osses incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, with respect to or by reason of . . . any inaccuracy in or breach of any of the representations or warranties of Seller."[1]  The Appellants argue that Brace is not entitled to any costs associated with the restrictive covenant claims because PEI was found not to have breached its representations or warranties with respect to those claims.  Brace argues that all of its costs flow from PEI's breach of its representations and warranties under the SPA.

7.      We agree with the Appellants that Brace is not entitled to costs associated with the restrictive covenant claims because the Court of Chancery found that PEI did not breach the SPA's restrictive covenants.  Where a party asserts more than one claim and is entitled to recover costs for one or more but not others, the party must make a good faith effort to segregate costs between those claims for which it is entitled to recover costs and those it is not.[2]  Brace made no effort to

---

[1] App. to Appellants' Opening Br. at A82.

[2] In *Council of Dorset Condominium Apartments v. Gordon*, on remand from this Court to explain its findings, the Court of Chancery noted in dicta that it would have awarded a party only those fees and costs that were associated with the claim on which the party had prevailed under the plaintiff condominium association's Code of Regulations (COR).  *See* 2002 WL 1335620, at *1 (Del. Ch. June 14, 2002).  There, the applicable provision of the plaintiff's COR stated that "[i]n any proceeding arising out of any alleged default by a Unit Owner, the prevailing party shall be entitled to recover the costs of the proceeding, and such reasonable attorneys' fees as may be determined by the court."  *Id.*  The defendant in *Council of Dorset Condominium Apartments* prevailed on the majority of its claims; the plaintiff prevailed on a single, "less important claim," and "the court denied the plaintiff's request for attorneys' fees and costs."  *Id.*  The court did so for several reasons, including the notion that "if th[e] court had interpreted the COR to authorize or even require an award of fees or costs to the plaintiff condominium association as the prevailing

segregate its costs between the inventory claims and the restrictive covenant claims. Neither the Court of Chancery nor the Appellants were under any obligation to attempt to segregate Brace's costs. Since Brace made no effort to segregate its costs, it failed to meet its burden of establishing the amount of costs it is entitled to recover for those claims upon which it was successful. Therefore, the Court of Chancery's award of $440,149 is reversed. On remand, the Court of Chancery should amend its judgment to reduce Brace's award of costs to $18,663.88.

8. The Court of Chancery also erred in the form of final judgment entered February 6, 2019. That order entered judgment in favor of the plaintiffs on Counts I, II, III and V of the amended complaint in the following amounts: $550,743, less eight adjustments; $561,975.82, comprising the sum awarded by an Independent

---

party on the less important claim, *any such award would have been limited to fees and costs related to that claim*." *Id.* (emphasis added). Additionally, in *Cantor Fitzgerald, L.P. v. Cantor*, the Court of Chancery, after denying reargument and in an amending and superseding opinion, awarded reasonable costs and attorneys' fees where the prevailing party "*produced adequate documentation of the fees and expenses incurred in righting the wrong done to it by defendants*." 2002 WL 1824908, at *2 (Del. Ch. June 21, 2002) (emphasis added). Under the particular facts in *Cantor*, however, the court did not apply traditional fee shifting concepts because the court found that the fees and expenses incurred there constituted actual damages. *Id.* The traditional fee shifting concept, advanced by the defendants in *Cantor* and which we adopt, requires that "the direct causal connection between the finding that a fee is warranted and the fee incurred must be established." *Id.* (relying on *Arbitrium (Cayman Islands) Handels AG v. Johnson*, 705 A.2d 227, 237 (Del. Ch. May 27, 1997), *aff'd sub nom Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542 (Del. 1998) (noting, in a request for attorneys' fees and expert witness's fees, that the party requesting expenses did not distinguish costs between a claim on which costs were recoverable and a claim on which costs were not recoverable and finding "further proceedings, and a more detailed record" necessary for the court to determine the appropriate amount of attorneys' fees)). We therefore take it as a precondition to an award of costs that a party make a good faith effort to distinguish costs related to any claim on which it may recover from those costs to which it is not similarly entitled.

Accountant in a post-closing adjustment proceeding, less an offset for $25,000 for the cost of that proceeding; the above-discussed attorneys' fees and costs; and pre and post judgment interest. The judgment also recited that the $725,059 awarded on Brace's inventory claims had been satisfied and was excluded from the judgment. The judgment also ordered that the sums due Brace be paid from the escrow fund established as part of the transaction.

9. All defendants' names are in the caption of the final judgment. The Appellants contend that no judgment in any amount should have been entered against Eric Peterson and Kirk Peterson because those parties were named as defendants only with respect to the restrictive covenant claims. The Appellants also contend that the Court of Chancery erred by entering judgment against the Guarantors for all amounts owed under the judgment. The Guarantors, they contend, are liable only for indemnification obligations arising under Section 6.2 of the SPA (the inventory claims). The Appellants also contend that the Court of Chancery erred by ordering that the escrow fund be used to pay the judgment amounts due Brace up to the amount of the judgment. Under Section 1.3 of the Escrow Agreement, the Appellants contend, the escrow funds are available only for satisfying indemnification claims arising under Section 6.2 of the SPA.

10. It appears from the amended complaint that Counts I, II and V were asserted against PEI only, and Count III was asserted only against PEI and the

Guarantors. Thus, on remand, the Court of Chancery should amend its judgment to clarify that judgment is entered against those parties only. It should also amend its judgment to clarify that the Guarantors are liable as Guarantors only for the costs and fees remaining on indemnification claims under Section 6.2 of the SPA. Finally, it should amend the judgment to reflect that only what remains unpaid on indemnification claims are payable out of the escrow fund.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is affirmed in part and reversed in part. The case is remanded for proceedings in conformity with this opinion. Jurisdiction is not retained.

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

8